UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:

Luis Gerardo Cruz, and
Orca Marie Cruz,
a/k/a Orca Marie Arnold,
a/k/a Orca Vizcarra,

        Debtors.
_____/

Chapter 13

Case No. 19-51697

Hon. Phillip J. Shefferly

**OPINION (1) GRANTING IN PART DAVID J. LALONDE'S OBJECTIONS TO
CONFIRMATION; (2) DENYING LALONDE'S MOTION TO DISMISS; AND
(3) DENYING DEBTORS' OBJECTION TO LALONDE'S PROOF OF CLAIM NO. 16**

## Introduction

In this chapter 13 case, an individual who was a long-time friend of the debtors claims that he gave the debtors $200,000.00 as a loan to buy a house to fix up and flip. The debtors say it was a gift, not a loan. The individual who gave them the money filed a proof of claim, objections to the debtors' plan and a motion to dismiss the chapter 13 case. The debtors filed an objection to the proof of claim. Because the issues relating to the plan objections, the motion to dismiss and the objection to the proof of claim all overlap, and because there are many disputed facts, the Court held an evidentiary hearing and made one record for all three matters. This opinion constitutes the Court's findings of fact and conclusions of law with respect to all three

matters. For the reasons explained, the Court grants in part the plan objections, denies the motion to dismiss, and denies the objection to the proof of claim.

## **Jurisdiction**

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O), over which the Court has jurisdiction under 28 U.S.C. § 1334(a).

## **Procedural history**

On August 13, 2019, Luis Gerardo Cruz ("Luis") and his wife, Orca Marie Cruz ("Orca") (collectively, "Debtors") filed this chapter 13 case. On August 26, 2019, the Debtors filed a plan. On October 14, 2019, David J. LaLonde ("LaLonde") filed objections to the plan. On October 22, 2019, LaLonde filed a proof of claim for $212,880.43 ("Claim") for "money loaned" to the Debtors.

The confirmation hearing was scheduled for March 5, 2020. The chapter 13 trustee ("Trustee") made some objections, but LaLonde made more objections (ECF No. 22). Specifically, LaLonde objected that the Debtors filed both their chapter 13 petition and their plan in bad faith, and that the plan is unrealistic and does not provide creditors with as much as they would receive in a liquidation. The Court found that LaLonde's objections and the Debtors' responses to them raise genuine disputes over material issues of fact. The Court scheduled an evidentiary hearing to resolve those disputes and adjourned the confirmation hearing to a later date.

Unfortunately, the COVID-19 public health crisis soon intervened. As a result, the Debtors and LaLonde agreed, with the Court's approval, to postpone the

evidentiary hearing.  As the public health crisis persisted, the Debtors and LaLonde entered further stipulations to adjourn the evidentiary hearing.

During this hiatus, the Debtors and LaLonde tried mediating their disputes, but mediation was not successful.  More litigation ensued.  On August 4, 2020, LaLonde filed a motion (ECF No. 74) to dismiss this case based largely on the same facts alleged in his plan objections.  On August 12, 2020, the Debtors filed an objection (ECF No. 78) to the Claim alleging many of the same facts alleged in their responses to LaLonde's plan objections.  On September 9, 2020, LaLonde filed more plan objections (ECF No. 85).  On September 11, 2020, the Debtors filed a second amended plan ("Plan") (ECF No. 88).

Given the long period of time that this case was pending, and in view of the escalating litigation moves by both the Debtors and LaLonde, the Court conferred with the Debtors and LaLonde about conducting a remote evidentiary hearing with a single record covering LaLonde's Plan objections and motion to dismiss and the Debtors' objection to the Claim.  LaLonde and the Debtors agreed to do so.  Following the conference, the Court scheduled a remote evidentiary hearing on a Webex platform.[1]

The Court held the evidentiary hearing over two days on September 24 and 29, 2020.  Four witnesses testified:  the Debtors, Lalonde and an expert witness, Zaid

---

[1]  After the evidentiary hearing was scheduled, LaLonde also filed a motion for relief from the automatic stay.  That motion was not heard by the Court as part of the evidentiary hearing and therefore will not be addressed in this opinion.  The Court will enter a separate order adjudicating that motion.

Shahmurad ("Shahmurad").  The Court admitted the Debtors' exhibits A, B and C, and LaLonde's exhibits 1-7, 9-13, 15-17, and 21-32.

## Facts

The Court makes the following findings of fact from the evidence adduced at the hearing.

The Debtors are married and live at 4227 Lake Knolls Drive, Oxford, Michigan ("Home").  They have children from prior relationships and with each other.  Altogether, there are seven people living in the Home.  Over the years, Orca has worked in various office and administrative jobs and Luis has worked as a mortgage loan officer, processor and underwriter.  This is not their first bankruptcy case.  Orca filed three prior cases and Luis filed one prior case.

LaLonde is an entrepreneur who has been in business for more than 20 years and owns or has owned in the past membership interests in various businesses.  Orca first met LaLonde when she went to work for him in 2010 at a company named Auto Credit Express.  Orca worked there until she was let go when a new manager came in sometime in 2011.  Orca later returned to work for LaLonde in 2018 at another company where she worked until after this bankruptcy case was filed.

During the time that Orca worked for LaLonde at Auto Credit Express, Orca and LaLonde became close personal friends.  After Orca left the company, she remained close with LaLonde.  They agree that their relationship became "like family."  Orca

felt that LaLonde was "like a father to me" and LaLonde reciprocated, treating Orca "like a daughter."

In October 2015, LaLonde first met Luis. Orca and Luis were planning on getting married. LaLonde and Luis became close personal friends too, each characterizing their relationship as "like family" and Luis stating that LaLonde was "like a brother." Orca, Luis and LaLonde socialized regularly.

In late 2015 or early 2016, Orca approached LaLonde to ask him to give her away at the wedding. LaLonde did not have any children of his own and felt honored. Orca's daughter then reached out to LaLonde and asked for his help in paying for the wedding. LaLonde agreed. He was glad that he had the means to do so and it made him feel good to be able to help Orca and Luis. LaLonde paid $31,000.00 for the wedding. LaLonde did not ask or expect that the Debtors would pay him back for this. The wedding was his gift to them.

After the wedding, the Debtors and LaLonde continued to socialize, going to dinner and casinos, and taking vacations together. LaLonde frequently paid for these outings and for gifts to the Debtors and their family members.

Sometime in early 2017, the Debtors and LaLonde talked about LaLonde helping the Debtors get started in a "business." Although Luis had worked for years in the mortgage loan business, he had experienced interruptions in employment and Orca, who had worked in different office jobs, was unemployed at the time. LaLonde wanted to do something to help the Debtors secure their financial future.

Because both Luis and Orca had some experience in fixing up and flipping homes, that's the business they decided on with LaLonde. Although nothing was put in writing, the basic idea was that LaLonde would provide funds for the Debtors to purchase properties that the Debtors would then fix up and sell, splitting the profits with LaLonde. Luis already owned a limited liability company, Great Lakes Properties & Management, LLC ("Great Lakes"), that he had formed in 2014 (Ex. A), so they agreed that Great Lakes would be the owner of the properties. The Debtors began looking for properties.

During the time that they were looking for properties, the Debtors made some changes to Great Lakes. The reason was because of a custody battle between Luis and his ex-wife that could potentially result in a claim against the interest held by Luis in Great Lakes. Luis, who was the sole member of Great Lakes, made Orca the resident agent for Great Lakes on March 28, 2017 (Ex. B). On May 5, 2017, Luis filed an amendment to the articles of organization for Great Lakes (Ex. C), that made Orca the sole member.

After looking at several properties, the Debtors made an offer to purchase the Home for $171,000.00. On May 17, 2017, through a company that he owned by the name of DL Ranch, LaLonde provided Great Lakes with $5,100.00 for the earnest

money deposit for the purchase the Home. Orca signed a promissory note to pay that amount back to LaLonde.[2]

In July 2017, LaLonde provided Great Lakes with $200,000.00 to pay the purchase price of the Home and to make repairs to it. LaLonde provided these funds to Great Lakes in three separate transactions over a span of a few days. Great Lakes deposited all the funds in its account at Chase Bank. Great Lakes deposited $140,000.000 (Ex. 24) on July 7, 2017, another $27,000.00 (Ex. 24) on July 12, 2017, and another $33,000.00 (Ex. 24) on July 14, 2017. These are the funds on which the Claim is based.

LaLonde, the Debtors, and Great Lakes did not hire attorneys to represent them or to document anything regarding the $200,000.00. The only document that anyone drafted regarding the $200,000.00 was a Promissory Note (Ex. 1) dated July 13, 2017 that LaLonde drafted himself by looking at Rocket Lawyer forms on the internet.

The Promissory Note describes LaLonde as the "Lender" and Great Lakes as the "Borrower." The Promissory Note provides for payment on demand and specifies that interest accrues on the unpaid balance at 2.5% per annum. Paragraph 8 of the Promissory Note states that Orca and Luis each "unconditionally guarantees all the obligations of the Borrower" under the Promissory Note. Paragraph 9 of the

---

[2] The Debtors' schedules list a disputed unsecured debt of $5,100.00 in favor of DL Ranch. But that $5,100.00 debt for the earnest money deposit on the Home is not part of the Claim that is the subject of this opinion.

Promissory Note states that the Promissory note "shall be signed by" Luis and Orca "on behalf of Great Lakes." In addition to a signature line for LaLonde, which LaLonde signed, there are two more signature lines that read as follows:

Borrower:

Great Lakes Properties & Management, LLC

By: _____
      Luis M. Cruz

By: _____
      Orca M. Cruz

Luis signed his name in the place provided for his signature. LaLonde believed that Luis was authorized to sign for Great Lakes because the Debtors had told him that Luis had formed and owned Great Lakes back when the Debtors and LaLonde first began exploring some type of business venture. There is no evidence that Luis or Orca ever told LaLonde about the changes that they had made to the ownership of Great Lakes back in spring 2017 and there is no evidence that Luis said anything one way or the other about whether he was authorized to sign the Promissory Note on behalf of Great Lakes. He just signed it. Orca was not present when Luis signed the Promissory Note and there is no evidence that LaLonde ever asked Orca to sign it.

The testimony of LaLonde and Luis regarding how and when Luis signed the Promissory Note is in direct conflict. LaLonde testified that Luis signed the Promissory Note at LaLonde's office on a weekday, July 13, 2017. LaLonde further

testified that he gave a copy of the Promissory Note to Luis and asked him to give it to Orca for her signature. Luis testified that he did not remember the date he signed the Promissory Note except that it was at LaLonde's home on a weekend after a day of heavy drinking with LaLonde. Further, Luis testified that the Promissory Note was not "valid" because he signed it without reading it after LaLonde told Luis that he only wanted the Promissory Note signed to enable him to avoid paying a gift tax to the IRS. Luis testified further that LaLonde did not give him a copy of the Promissory Note and that LaLonde also told Luis not to tell Orca about the Promissory Note.

There is nothing in the record to corroborate any of Luis' testimony on this subject. Not the date, the location, the drinking or the gift tax story. Further, the Court is skeptical that Luis, who has spent the last 20 years as a mortgage loan officer, processor and underwriter, would sign the Promissory Note without reading it, and believing, as he now testifies, that it was not "valid."

In contrast, there is ample evidence in the record to corroborate LaLonde's testimony on this subject. The date on the Promissory Note is July 13, 2017. That was a weekday, not a weekend as Luis claimed. This date is also contemporaneous with LaLonde providing the $200,000.00. And LaLonde's testimony about the timing and circumstances of signing the Promissory Note is far more detailed and precise than Luis' testimony.

The Court does not find Luis' testimony about the timing and circumstances of signing the Promissory Note to be credible. The Court finds LaLonde's testimony

about the timing and circumstances of signing the Promissory Note to be more credible and adopts that part of LaLonde's testimony as part of the Court's findings of fact.

Although LaLonde and the Debtors now disagree as to whether the $200,000.00 was a loan or a gift, they do agree that they all initially intended to purchase the Home to fix it up, flip it and share the resulting profit. And they also agree that at some point in time that changed.

In spring 2018, the Debtors were living in a trailer home that had serious mold problems requiring a lot of work. Because of this, the Debtors spoke to LaLonde about moving into the Home rather than paying for expensive repairs to their trailer home. LaLonde did not object. The Debtors moved into the Home in summer 2018.

With the relationship between the Debtors and LaLonde still friendly, and Orca now back working for LaLonde, the Debtors approached LaLonde about possibly borrowing $35,000.00. LaLonde did not have the funds available to make the loan and declined. The Debtors then asked LaLonde if they could move the Home out of Great Lakes' name so that they could use it to obtain a mortgage loan. They testified that they asked LaLonde's permission "out of respect" for him. Believing that the Debtors were intending to obtain a loan of about the same size that they had requested from him — $35,000.00 — LaLonde did not object.

On September 18, 2018, Great Lakes signed and recorded a Quit Claim Deed ("Deed") (Ex. 3) that transferred the Home from Great Lakes to Orca for $1.00. Orca drafted the Deed and signed it on behalf of Great Lakes as an "Authorized Signer." On

September 24, 2018, the Debtors borrowed $80,000.00 from Oakland County Credit Union (now known as Vibe Credit Union and hereafter referred to as "Vibe"), secured by a first mortgage (Ex. 7) on the Home. Prior to making the mortgage loan, Vibe obtained an appraisal (Ex. 9) that valued the Home at $240,000.00 on July 28, 2018. The appraisal was performed by Shahmurad, a certified, licensed, independent appraiser with Z Logic Appraisals, LLC, who had no prior connection to Vibe, the Debtors or LaLonde. The Debtors used the mortgage loan proceeds to fix up the Home, pay off some loans on their cars and motorcycle, and pay other personal bills.

Throughout all this time, neither Great Lakes nor the Debtors made any payments on the Promissory Note except for two payments of $2,050.00 each that Luis said he made because it made him "feel good" to pay something to LaLonde and "be nice to him."

In February 2019, the relationship between the Debtors and LaLonde soured. LaLonde asked the Debtors to pay back the $200,000.00. The Debtors said they did not have to pay it back because it was a gift. LaLonde said not true, it was a loan. They had a heated exchange. Orca claimed that she had never seen the Promissory Note before. LaLonde claimed that he learned then that the first mortgage with Vibe was for much more than he was led to believe.

By summer 2019, the rupture in the relationship between the Debtors and LaLonde was complete. On July 31, 2019, LaLonde's attorney sent a letter (Ex. 2) to Great Lakes and the Debtors demanding payment of the $200,000.00 plus interest and

costs. Meanwhile, a few days earlier, and unbeknownst to LaLonde, the Debtors had borrowed another $40,000.00 from Vibe against the Home. On July 22, 2019, the Debtors granted Vibe a second mortgage (Ex. 10) on the Home to secure the loan. The Debtors initially took $24,000.00 of the second mortgage loan proceeds and gave them to Orca's daughter to pay for college tuition but, except for $2,500.00 that she used, the daughter returned those proceeds to Orca. Orca then put the money in a cash lockbox to pay personal expenses. The Debtors soon spent all the second mortgage loan proceeds paying off credit cards, an attorney for Luis' child custody proceedings, landscaping at the Home, family vacations and other personal expenses. Three weeks after taking out the second mortgage, the Debtors filed this chapter 13 case. About the same time, LaLonde terminated Orca's employment.

On their schedules (ECF No. 10) filed on August 26, 2019, the Debtors list total assets of $220,704.00. By far, the largest asset is the Home, which they list as having a value of $185,000.00.

On the liabilities side, the Debtors' schedules list two secured debts, each owed to Vibe, one in the amount of $77,402.00 and the other in the amount of $40,000.00, both secured by the Home. The Debtors list unsecured debts of $219,951.00. By far, the largest listed unsecured debt is $200,000.00 to LaLonde. The Debtors' schedules describe this debt as "Unsecured loan with business," and note it as "disputed" and owed by Luis, not Orca.

The evidence at the hearing does not demonstrate any inaccuracies in the Debtors' schedules except for the value of the Home. Luis testified at the hearing that the value of the Home was more like $200,000.00 at the time the chapter 13 petition was filed. Luis testified that this value was consistent with automated valuation models (Ex. 12) that he pulled from the internet and that are of the type regularly used in the mortgage loan business. However, Luis' estimate of value is directly controverted by the testimony of Shahmurad. On July 28, 2018, Shahmurad performed a full appraisal (Ex. 9) of the Home and valued it at $240,000.00. Shahmurad updated his appraisal as of the chapter 13 petition date and valued the Home at $250,000.00 on that date. The Court gives much greater weight to the disinterested, expert testimony of Shahmurad than to the self-interested testimony of Luis. Based on Shahmurad's testimony, the Court finds that the value of the Home on the chapter 13 petition date was $250,000.00.

The Plan provides for the Debtors to make payments of $600.00 per month for 60 months. Presently, the Debtors are current in their Plan payments. The Plan further provides for Orca to keep the Home and for the Debtors to directly pay the two mortgages held by Vibe on the Home. Administrative expense claims will be paid first under the Plan followed by payment in full plus interest on all allowed claims against Orca. If there's anything left, it will be distributed to allowed claims against Luis. The Plan does not project that there will be anything left and therefore provides for a "minimum dividend" to Luis' unsecured creditors of 0%.

## The Debtors' objection to the Claim

The Debtors' objection to the Claim was not filed until after LaLonde's Plan objections and motion to dismiss, but it makes sense to consider the objection to the Claim first. Even though LaLonde would have standing to object to the Plan and move to dismiss because of his other claim in this case — the $5,100.00 debt that the Debtors list as disputed on their schedules — the Court's adjudication of whether the $200,000.00 is a loan or a gift will make a big difference in the Court's consideration of the Plan objections and the motion to dismiss.

Under § 502(a) of the Bankruptcy Code, the Claim was deemed allowed when filed. However, that presumption of allowance no longer applied once the Debtors came forward, as they did in their objection, with some evidence to refute the Claim. At that point, the burden shifted back to LaLonde to prove the validity of the Claim.

> "'If a party objects to the claim, the objecting party carries the burden of going forward with the evidence to overcome the *prima facie* validity and amount of the claim. If the objecting party produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of persuasion shifts back to the claimant. The claimant ultimately bears the burden of proving the validity of the claim by a preponderance of the evidence.'"

In re Central Processing Services, LLC, 606 B.R. 712, 715 (Bankr. E.D. Mich. 2019) (quoting In re Kaid, 472 B.R. 1, 5 (Bankr. E.D. Mich. 2012) (quoting In re Hughes, 313 B.R. 205, 208-09 (Bankr. E.D. Mich. 2004))).

Orca and Luis object to the allowance of the Claim against either of them first and foremost because they assert that the $200,000.00 from LaLonde was a gift not a

loan. In support, they testified to unspoken "understandings" and "expectations" that they would not have to pay back the $200,000.00 because LaLonde had previously made generous personal gifts to the Debtors and their family members. However, the Debtors do not support their characterization that this was a gift by any probative evidence.

There is no evidence that LaLonde had ever given the Debtors anywhere near this amount of money in the past. The most he had ever given them was $31,000.00 to pay for their wedding and the Debtors and LaLonde all acknowledge that they agreed at the time of the wedding that this was a gift that the Debtors would not have to pay back. In contrast to the descriptions that the Debtors themselves gave for LaLonde's previous personal gifts — paying for the Debtors' wedding, dinners, drinks, vacations and trips to the casino — the Debtors concede that this $200,000.00 was expressly provided by LaLonde for the Debtors to go into a "business" in which the Debtors and LaLonde would split the proceeds. Even the Debtors do not assert that the word "gift" was ever used in any conversation before or at the time LaLonde provided Great Lakes with the $200,000.00. The first mention of the word "gift" in the Debtors' testimony only occurred after LaLonde asked the Debtors to pay back the $200,000.00. The Debtors' conclusory, after the fact statement that LaLonde made a gift of $200,000.00 is just not supported by the evidence.

On the other hand, LaLonde's testimony that the $200,000.00 was a loan to Great Lakes is corroborated by the only paper signed by any of the parties regarding these

funds — the Promissory Note. It is simply not credible that Luis, an experienced mortgage loan officer, processor and underwriter, signed the Promissory Note believing that the $200,000.00 was a gift. A review of Luis' deposition testimony (which was somewhat different than his trial testimony), where Luis repeatedly referred to the funds that LaLonde "lent" to Great Lakes, demonstrates that Luis knew this was no gift. What's more, Luis admits making two payments to LaLonde, although he implausibly tries to explain them away by saying he only did so to make him "feel good" and to "be nice" to LaLonde.

The Court finds that the $200,000.00 was a loan, not a gift. Next, the Court must determine whether only one or both of the Debtors are liable for repayment of the loan.

## The Claim against Luis

The Court will first consider whether LaLonde has met his burden of proof to show that he has an allowable claim against Luis.

The Promissory Note is no model of clarity. The very first paragraph identifies Great Lakes as the "borrower" and paragraph 8 states that Luis "unconditionally guarantees" the Promissory Note. Paragraph 9 says that the Promissory Note shall be signed by Luis and Orca "on behalf of Great Lakes." Despite the text of the Promissory Note treating Luis in dual capacities as a guarantor and a representative of Great Lakes, there is only one signature line for him. That creates an ambiguity.

In Michigan, "[i]f a signature on a promissory note is ambiguous, parol evidence is admissible to determine whether it was the intent of the parties that the signer be

individually liable." Martone Building Co. v. Barnette, No. 299150, 2012 WL 1890227, at *3 (Mich. Ct. App. May 24, 2012) (citing Lexington State Bank v. Rose City Creamery Co., 173 N.W. 481 (Mich. 1919)). A signature is ambiguous if "'anything on the face of the paper suggests a doubt as to the party bound[.]'" Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 316 (6th Cir. 1998) (quoting Armstrong v. Andrews, 67 N.W. 567, 568 (Mich. 1896)).

Here, when asked in what capacity he signed the Promissory Note, Luis did not try to split hairs and deny that he intended to sign it personally. Luis testified that "I just signed it," and "it's me." Luis also acknowledged in his testimony that the text of the Promissory Note states that Luis "unconditionally guarantees" the Promissory Note. Luis' unrebutted testimony resolves any ambiguity about Luis' intention and demonstrates that when he signed the Promissory Note, he intended to be personally liable for payment in full. Therefore, LaLonde has met his burden of proof to establish the validity of the Claim against Luis.

## The Claim against Orca

Whether LaLonde met his burden of proof to show an allowable claim against Orca is more complicated. Unlike Luis, Orca did not sign the Promissory Note. Nor is there any evidence in the record that LaLonde ever asked her to sign it. LaLonde testified that he asked Luis to have Orca sign it. That shows that LaLonde intended Orca to sign it, but it does not establish that Orca ever agreed to sign it. Orca testified without contradiction that she did not even see the Promissory Note until February or

March 2019. Further, there is no evidence in the record that Orca ever made even an oral promise to pay back the $200,000.00 that LaLonde provided. If LaLonde is going to meet his burden of proof to establish the validity of the Claim against Orca, he's going to have to do it with some other legal theory and evidence because the record does not show that Orca ever made a written or oral promise to pay back the $200,000.00.

LaLonde concedes as much but argues that he does have another theory to establish the validity of the Claim against Orca and that there is evidence to support it. Specifically, LaLonde argues that when Great Lakes gave Orca the Deed to the Home for $1.00, Great Lakes made a fraudulent transfer of the Home that is avoidable under the Michigan Uniform Voidable Transactions Act ("MUVTA"), Michigan Compiled Laws §§ 566.31 to 566.45. According to LaLonde, Orca is now liable for the lesser of the value of the Home or the amount of the Claim because Orca is the transferee of the property that Great Lakes fraudulently transferred.

Section 566.34 of MUVTA creates a cause of action to avoid a transfer made with actual intent to hinder, delay or defraud any creditor of the transferor. LaLonde's response to the Debtors' objection to the Claim mentions this in passing but makes no real effort to marshal evidence to establish that Great Lakes intended to defraud LaLonde when it gave the Deed to Orca. And the evidence does not establish a fraudulent intent by Great Lakes. To the extent that the record shows anything at all on this point, it supports the Debtors' contention that the reason they had Great Lakes

put the Home in Orca's name was to get the first mortgage loan from Vibe and that they only obtained that loan after asking LaLonde for his permission to do so. The Deed is not avoidable under MUVTA § 566.34.

Section 566.35(1) of MUVTA creates a cause of action based on constructive fraud, not actual fraud. Under this section, a transfer is voidable as to a creditor of the transferor if the transferor made the transfer without receiving reasonably equivalent value for the transfer and was insolvent at the time of the transfer or became insolvent as a result of the transfer. The first element that must be shown to warrant avoidance under this statute is that the party seeking relief — in this case LaLonde — is a "creditor" of the transferor — in this case Great Lakes. If LaLonde is not a creditor of Great Lakes, this theory of liability as to Orca fails.

Section 566.31(d) of MUVTA defines "creditor" as "a person that has a claim." "Claim" in turn is defined in § 566.31(c) as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." "'Debt' means liability on a claim" and "'debtor' means a person that is liable on a claim." MUVTA § 566.31(e) and (f).

Does LaLonde qualify as a creditor of Great Lakes under these definitions? For the reasons already explained in this opinion, the Court finds that Luis is personally liable for payment of the Promissory Note. But that finding does not answer whether Luis' signature could also bind Great Lakes and make it liable as the borrower under

the Promissory Note. As noted, the signature line on the Promissory Note for Luis is ambiguous. Under Michigan law, an ambiguous signature on a promissory note, when explained through parol evidence, can be the basis for liability both personally and for an entity on whose behalf the promissory note was found to be signed. Martone Building v. Barnette, 2012 WL 1890227, at *3.

The signature line on the Promissory Note that Luis signed is directly below the description of Great Lakes as "Borrower," and the line itself begins with the preface "By." Further, paragraph 8 of the Promissory Note expressly states that the Promissory Note "shall be signed by Luis . . . on behalf of Great Lakes." These markings on the signature line and the text of the Promissory Note indicate that Luis was signing in a representative capacity for Great Lakes as the borrower as well as in his individual capacity as a personal guarantor.

The fact that Luis no longer owned an interest in Great Lakes when Luis signed the Promissory Note is of no moment because the Debtors had led LaLonde to believe that Luis was authorized to sign on behalf of Great Lakes. Luis and Orca both told LaLonde that Luis had formed and owned Great Lakes and that they would conduct the business of buying and flipping houses in Great Lakes. They did not disclose to LaLonde that Luis had transferred his membership interest in Great Lake to Orca before LaLonde put up the $200,000.00 and had Luis sign the Promissory Note. By their prior, uncontroverted statements to LaLonde, Luis and Orca led LaLonde to believe that Luis was authorized to sign the Promissory Note on behalf of Great Lakes.

LaLonde was entitled to rely on Luis' apparent authority to sign the Promissory Note on behalf of Great Lakes. "[I]n the absence of knowledge of any limitation upon the authority apparently conferred by the principal, a [party] may rely upon such apparent authority." <u>First Nat'l Bank of Ann Arbor v. Holmes</u>, 181 N.W. 46, 53 (Mich. 1921) (citation omitted).

There is other evidence in the record that also tends to prove that the $200,000.00 was a loan to Great Lakes that it is obligated to pay back. As noted earlier, Luis repeatedly referred in his deposition testimony to the $200,000.00 as money "lent" by LaLonde. The entire amount of this money "lent" was deposited in a bank account that Great Lakes maintained at Chase Bank in three separate deposits on July 7, 12 and 14, 2017 (Ex. 24).

After carefully examining all the evidence in the record, and the parol testimony about Luis' signature on the Promissory Note, the Court holds that Luis' signature binds Great Lakes as the borrower on the Promissory Note. That means that LaLonde holds a claim under the Promissory Note against Great Lakes. More important, it means that LaLonde was a creditor of Great Lakes as of July 13, 2017, which was before the Deed was made. Therefore, LaLonde has the right to bring a cause of action under MUVTA § 566.35 to avoid the Deed.

The fact that LaLonde is a creditor of Great Lakes for purposes of MUVTA, entitled to bring an avoidance action under that statute, does not automatically mean that he also has a claim against Orca. For LaLonde to prevail on his theory that

MUVTA somehow gives him a claim against Orca, LaLonde must prove that the Deed from Great Lakes to Orca is avoidable under MUVTA and that MUVTA allows him to obtain a recovery from Orca as the recipient of a constructively fraudulent transfer.

The first element under § 566.35(1) is that there must be a transfer. "Transfer" is defined in MUVTA § 566.31(l) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing with an asset or an interest in an asset." The Deed meets this definition.

The next element under § 566.35(1) is that the transfer must have been made for less than reasonably equivalent value. Under MUVTA § 566.33(1) "[v]alue is given for a transfer . . . if, in exchange for the transfer . . . , property is transferred or an antecedent debt is secured or satisfied." The only value given by Orca in exchange for the Deed is the recited consideration of $1.00. One dollar is not reasonably equivalent value for the Home, which was purchased for $171,000.00 and appraised at $240,000.00 just a few weeks before the Deed was made.

The next element under § 566.35(1) is that the transferor must be insolvent or become insolvent because of the transfer. Under MUVTA § 566.32, a transferor is "insolvent" if its debts exceed its assets, exclusive of any assets transferred in a manner that is voidable under MUVTA. Orca and Luis both testified without contradiction that Great Lakes owned no assets or business other than the Home. And, for the reasons explained above, Great Lakes owed a debt to LaLonde for the Promissory Note at the

time that it made the Deed.  Because Great Lakes had no remaining assets after it transferred the Home, it became insolvent as a result of that transfer.

The Court concludes that LaLonde has shown that all the elements necessary to avoid the Deed as a constructively fraudulent transfer under § 566.35(1) are present. But does that give LaLonde a claim against Orca?  LaLonde argues that MUVTA gives LaLonde a claim against Orca under two different sections of the act.

First, among other remedies, § 566.37(1) provides that LaLonde, as a creditor of the entity that made the avoidable transfer, Great Lakes, may obtain avoidance of the transfer to the extent necessary to pay his claim, and may also attach the asset transferred.  That gives LaLonde the right to proceed against the Home.  Second, under § 566.38(2)(a), if a transfer is avoidable under § 566.37(1), "the creditor may recover a judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against . . . [t]he first transferee of the asset[.]"  That gives LaLonde the right to proceed against Orca as the first transferee of the Home.[3]

---

[3]  For purposes of establishing his claim against Orca through MUVTA, LaLonde does not need to first obtain a judgment against her or a lien on the Home.  The effect of MUVTA "is to abrogate the ancient rule whereby a judgment and lien were essential preliminaries to equitable relief against a fraudulent conveyance."  Hartford Accident & Indemnity Co. v. Jirasek, 235 N.W. 836, 839 (Mich. 1931) (internal quotation marks and citations omitted).  "The act is explicit that a creditor may now maintain a suit in equity to annul a fraudulent conveyance, although his debt has not matured."  Id. (citations omitted).  A creditor "may seek the aid of equity and without attachment or execution, may establish his debt, whether matured or unmatured, and

LaLonde has shown that he was a creditor of Great Lakes and that Great Lakes made a constructively transfer of the Home to Orca that is avoidable under MUVTA. Therefore, LaLonde has met his burden of proof to show that he has a valid claim against Orca for the lesser of the value of the Home or the amount necessary to satisfy his claim against Great Lakes under the Promissory Note.

The Court overrules the Debtors' objection to the Claim and holds the Claim is allowed in favor of LaLonde and against both Luis and Orca.

## LaLonde's objections to confirmation

Section 1325(a) of the Bankruptcy Code states that the Court shall confirm a plan if the requirements set forth in that statute are met. A party objecting to confirmation must come forward with evidence that the proposed plan fails to meet the requirements for confirmation. In re Hager, 572 B.R. 848, 851 (Bankr. W.D. Mich. 2017). However, the ultimate burden of persuasion rests with the debtor. Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1126 (6th Cir. 1990).

LaLonde makes many objections to confirmation of the Plan but they boil down to four basic arguments: (1) the Debtors' chapter 13 petition was not filed in good faith; (2) the Plan is unrealistic; (3) the Plan is not proposed in good faith; and (4) the Plan does not provide LaLonde with as much as he would receive in a chapter 7 liquidation. The Court will address these objections in sequence.

---

challenge the conveyance in the compass of a single suit." Id. at 839-40 (citations omitted).

### The Debtors' good faith in filing the petition

Section 1325(a)(7) states that the Court may only confirm a plan if the Court finds that the Debtors filed the chapter 13 petition in good faith. LaLonde first argues that the Debtors' petition was not filed in good faith because this is Orca's fourth bankruptcy case and Luis' second bankruptcy case. But LaLonde does not explain how those prior cases demonstrate a lack of good faith in *this* case. LaLonde does not assert that he was a creditor in any of those cases. And LaLonde does not refute Orca's testimony that she obtained discharges in all her prior cases and that she only filed them because she was dealing with cancer and with an ex-husband with a serious spending problem. Without some connection to LaLonde or to this case, the Debtors' prior cases are not probative of whether the Debtors filed the petition in this case in good faith.

LaLonde next argues that the Debtors' petition was not filed in good faith because it was a "scheme to protect and legitimize" the Deed from Great Lakes to Orca. For the reasons explained earlier in this opinion, the Court agrees with LaLonde that the transfer of the Home by Great Lakes to Orca is a constructively fraudulent transfer under MUVTA that gives rise to a claim in favor of LaLonde against Orca. But LaLonde does not explain how filing a chapter 13 petition might somehow "protect and legitimize" the Deed. If anything, filing the chapter 13 petition made it easier for the Debtors' creditors to scrutinize and challenge the Deed because of the disclosure requirements in the Bankruptcy Code. LaLonde has not shown that the Deed is

probative of the Debtors' good faith in filing a chapter 13 petition a year after the transfer for the purpose of proposing a plan to pay their creditors.

LaLonde next argues that the Debtors' petition was not filed in good faith because it was an attempt to prevent LaLonde from collecting on the Promissory Note. However, the fact that the Debtors filed their petition because LaLonde demanded payment of the Promissory Note is not evidence of any bad faith. Unsurprisingly, the most common reason why individuals file bankruptcy is because they can't pay their debts.

Finally, LaLonde points out that there are multiple inaccuracies in a list of itemized expenses (Ex. 25) that the Debtors put together to explain to the Trustee how they disbursed the proceeds of the two mortgage loans obtained from Vibe. Orca's testimony shows that LaLonde is correct in stating that many of the disbursements on this list were paid before the mortgage loans were taken out and therefore could not have been paid out of the mortgage loan proceeds. That's a problem for the Debtors but it's hard to see how this problem tends to show that the Debtors' petition — filed several months before this list was made — was not filed in good faith.

The Court overrules LaLonde's objection that the Debtors' petition was not filed in good faith as required by § 1325(a)(7).

<u>Feasibility of the Plan</u>

LaLonde argues that the Plan is unrealistic because the Debtors' budget "fails to address common household and/or monthly expenses such as clothing, garbage pick-up

and personal care items as well as health insurance costs and/or health costs." The Court construes this argument as a feasibility objection under § 1325(a)(6). In order to confirm a plan, that section requires the Court to find that a debtor will be able to make the payments under the plan. This does not mean that a debtor must somehow guarantee that every plan payment will be made, but it does require that a debtor's schedules show enough income after paying reasonably necessary expenses to make the payments proposed by the plan.

The Debtors testified that they are both now working. They were not asked any questions about the expenses on their schedule J. The Debtors' testimony does not leave the impression that the income and expenses set forth in their schedules is inaccurate or that they will not be able to make the monthly payments proposed by the Plan. LaLonde did not adduce any evidence at the hearing to support his conclusory statement that the Debtors' budget is unrealistic.

The Court overrules LaLonde's objection that the Plan is not feasible as required by § 1325(a)(6).

### The Debtors' good faith in filing the Plan

Under § 1325(a), it is not enough that a chapter 13 petition is filed in good faith. Section 1325(a)(3) requires the Court to confirm a plan only if the plan is filed in good faith too. As the Plan proponents, the Debtors have the burden of proof that the Plan is filed in good faith. Hauk v. Valdivia (In re Valdivia), 617 B.R. 278, 289 (Bankr. E.D. Mich. 2020) (citing Ed Schory & Sons, Inc. v. Francis (In re Francis), 273 B.R.

87, 91 (B.A.P. 6th Cir. 2002) (citing <u>Hardin v. Caldwell</u> (<u>In re Caldwell</u>), 895 F.2d 1123, 1126 (6th Cir. 1990))).   The good faith requirement under this section is a flexible, case-by-case standard that focuses on the totality of the debtor's conduct both before and after the plan is submitted.  Basically, good faith is evaluated in light of the structure and general purpose of chapter 13, which involves a sincerely intended repayment of pre-petition debt consistent with available resources.

In support of LaLonde's argument that the Plan was not filed in good faith, LaLonde relies primarily on the following facts:  Great Lakes transferred the Home to Orca for $1.00; the Debtors undervalued the Home on their schedules; the list of disbursements prepared by the Debtors for the Trustee was inaccurate; and the Plan separates the debts of Orca — which will be paid in full — from the debts of Luis — which will be paid little or nothing.

In support of their argument that they filed the Plan in good faith, the Debtors point out that they filed a 60 month plan even though they are below median income debtors who are required only to file a 36 month plan.  Further, the Debtors are both now working and are current on all Plan payments.  Finally, the Debtors have fully cooperated with the Trustee and have complied with all requests for information from the Trustee throughout this case.  As for the itemized list of disbursements (Ex. 25), that was something the Debtors voluntarily put together as an information tool to help the Trustee understand their disbursements.  Any discrepancies in it are because Orca

did not have access to all her bank records when she made the list and were not meant to mislead the Trustee.

There is no dispute that Great Lakes transferred the Home to Orca for $1.00. And, after hearing the evidence, the Court agrees that the Debtors undervalued the Home on their schedules, even though Luis' explanation for how they valued it — based on automated valuation models of the type used by Luis in his business — is credible. Similarly, the Court agrees that the itemized list of disbursements that the Debtors provided to the Trustee was inaccurate, but Orca's testimony about the list persuades the Court that any inaccuracies in the list were not intentional. None of these facts convince the Court that the Plan was not filed in good faith.

The most troubling fact cited by LaLonde regarding the Debtors' good faith in filing the Plan, is the way the Plan treats the Claim. At different times in their chapter 13 case, the Debtors have treated the Claim as allowable against Luis. The Debtors' objection to the Claim changed this position somewhat by arguing that the $200,000.00 was really a gift and therefore the Claim should be disallowed in its entirety as to both Debtors. But the Debtors' fallback position remained the same: even if the Court rejects the gift argument, the Claim should only be allowed as to Luis, and not Orca, who now owns the Home. Based on this approach, the Plan proposes to pay Orca's debts in full and pay Luis' debts — including the Claim — little or nothing.

For the reasons explained above, the Court rejects the gift argument and overrules the Debtors' objection to the Claim against both Luis and Orca. But the Court

only reached its decision after a lengthy evidentiary hearing with many contested facts. As will be discussed in the next section of this opinion, the Court's decision on this issue means that the Plan will not be able to meet the best interest of creditors test under § 1325(a)(4). But the fact that the Plan was premised on the Debtors' asserted legal position that Orca is not liable for the Claim does not necessarily mean that the Plan was not filed in good faith. Although the Debtors have lost on their objection to the Claim, the Court does not find their arguments so frivolous as to conclude that the Plan was not filed in good faith. The Court looks at the good faith of a debtor in filing a plan when the plan is filed, not in hindsight. When the Debtors filed the Plan, they believed that they would prevail on their objection to the Claim. That the Court holds otherwise does not mean that the Plan was not filed in good faith.

After examining the totality of circumstances, the Court overrules LaLonde's objection that the Debtors did not propose the Plan in good faith as required by § 1325(a)(3).

<u>The best interest of creditors test</u>

Section 1325(a)(4) states that the Court may only confirm a plan if it finds that the property to be distributed under the plan on account of each allowed unsecured claim has a value on the effective date of the plan that is not less than the amount that would be paid on such claim in a chapter 7 liquidation. This requirement is frequently referred to as the best interest of creditors test.

The Plan is premised on the Debtors' assertion that the Claim is not valid as to both Debtors but, most importantly, as to Orca. The Court has now rejected that assertion. Here's what that means under § 1325(a)(4).

Orca is the owner of the Home. The Home had a value of $250,000.00 on the date the debtors filed their petition. In a chapter 7 liquidation, the Home would be sold by the trustee. After Vibe's two mortgages are paid, and any allowable exemptions are taken, any proceeds remaining from the sale of the Home would go first to pay the chapter 7 expenses of administration and next to the holders of unsecured claims, including LaLonde as the holder of the Claim. The Debtors have not shown that the Plan distributes property on the Claim that is not less than the Claim would receive if the Home were sold in a chapter 7 liquidation.

The Court sustains LaLonde's objection that the Plan does not meet the best interest of creditors test under § 1325(a)(4) and therefore cannot be confirmed.

### Lalonde's motion to dismiss

Section 1307(c) provides that the Court may dismiss a case "for cause." "The party moving for the dismissal bears the burden of proof under section 1307(c)." In re Duruji, 287 B.R. 710, 713 (Bankr. S.D. Ohio 2003) (citing Alt v. United States (In re Alt), 305 F.3d 413, 420 (6th Cir. 2002)). This includes a party moving for dismissal based on bad faith. Hauk v. Valdivia (In re Valdivia), 617 B.R. 278, 288-89 (Bankr. E.D. Mich. 2020).

LaLonde's motion to dismiss is based entirely on the same allegations as LaLonde makes in his Plan objections. The Court is not going to repeat them here.

After reviewing all the evidence in the record, and the totality of the Debtors' circumstance, the Court does not find that the Debtors have acted in less than good faith by filing their petition, filing the Plan or otherwise during this chapter 13 case. For the most part, except for Luis' testimony about the signing of the Promissory Note, the Court finds the Debtors' testimony to be credible. They seem to be sincere in filing a chapter 13 case to propose a plan to pay their creditors and get their financial lives in order. Of course, the Court will not confirm the Plan because the Court has now overruled the Debtors' objection to the Claim and sustained LaLonde's best interest of creditors objection to the Plan. But the Court will give the Debtors an opportunity to propose a different plan to address their creditors based on the Court's finding that the Debtors have not acted in less than good faith during their chapter 13 case.

The Court denies LaLonde's motion to dismiss under § 1307(c).

## Conclusion

It is regrettable that LaLonde and the Debtors, former close friends, did not fully document their intentions when LaLonde provided $200,000.00 to Great Lakes to pay for and repair the Home. However, the evidence establishes that this was a loan to Great Lakes, personally guaranteed by Luis. And even though Orca did not sign a personal guarantee of the Promissory Note, she too is personally liable to pay to Great Lakes the lesser of the Claim or the value of the Home because the Deed of the Home

to her was constructively fraudulent as to the creditors of Great Lakes — including LaLonde.  If the Debtors intend to successfully confirm a chapter 13 plan, it will have to be a plan that recognizes that the Claim is allowed against both Debtors and accounts for the value of the Home in a manner that meets the best interest of creditors test.

The Court will enter separate orders consistent with this opinion.

**Signed on October 12, 2020**

/s/ Phillip J. Shefferly
_____
**Phillip J. Shefferly**
**United States Bankruptcy Judge**